Good morning. May I please the court? My name is Michael O'Flanagan. I'm appearing on behalf of plaintiff and appellant Onita Tuggles. I'd like to reserve three minutes for rebuttal. If you could watch the clock, that would be helpful. I think that our contentions are sufficiently briefed in the papers in this case. There were just a few issues that I wanted to note. This case arises from allegations that the defendants engaged in impermissible targeting of members of the community in Antioch, California, based on race and on source of income. I believe the district court in this case did an able job evaluating what were a large number of claims and a large number of defendants, but there is one claim that got past them, and that's the source of our – the basis for our appeal, specifically the plaintiff's claims under California's Fair Employment and Housing Act. First point is that I think contrary to the Respondent's contentions, the plaintiff raised these issues in the operative complaint in the case, and it was also before the court on summary judgment. There are a number of examples cited in our briefs as to the evidence that was submitted in the case. I think that in evaluating the large number of claims here, however, the district court simply overlooked the source of income-based discrimination claim advanced by the plaintiff in this case. Well, I guess absent convincing evidence that the California Supreme Court would decide differently, aren't we bound by Sabi v. Sterling? I would say no, Your Honor. I think unsurprisingly. How are we not bound by that? Your Honor, I think that a reading of the statute in its entirety, as well as a consideration of the legislative history and the text of the case law, specifically Sabi, indicates that the Fair Employment and Housing Act was intended to cover cases such as this, and that the holding in Sabi should be limited specifically to the facts of that case, specifically instances where the plaintiff is a tenant bringing a claim against a landlord on the basis of the landlord's refusal to accept a Section 8 housing voucher. The distinguishing feature of this case is that the plaintiff was involved in an ongoing tenancy with a landlord who was not opposed to her remaining on the premises or to accepting a Section 8 housing voucher, and it was only through the intervention and interference of the defendants in this case that she eventually lost her home and was forced to move. I think that, as indicated in our briefing, the Fair Employment and Housing Act has broad protections in a number of contexts, and that it makes it clear that the Act should be liberally construed to meet its aims. I would direct the Court to the Sizemore case, which we cite in our briefing, for the proposition that the Fair Employment and Housing Act applies to a broad range of circumstances beyond the landlord-tenant context. And I would also note that Sabi, although it engages in very broad reading of the Section 12955P definition of income, I think notwithstanding that, Sabi nonetheless discusses and approves of the holding in Sizemore. I think if you specifically look at the Sabi holding at 183 Cadillac 4th at 942, it quotes with approval the language from Sizemore which says that the protections of the Act are broad and should apply in a large number of situations beyond landlord-tenant disputes. I think that the construction that is advanced by the defendants here is counterintuitive because to argue that Section 8 housing vouchers are not protected in this circumstance from discrimination, source of income discrimination, would actually put Section 8 housing voucher recipients at a lower level of risk than other economically disadvantaged individuals. Say an individual who is receiving general assistance who used that money to pay for their rent, they would be entitled to source of income protection, but a Section 8 housing voucher recipient would not. Finally, I think that with regard to the defendant's argument that they presented sufficient nondiscriminatory justifications for their actions in this case, primarily I would argue that this is an issue that should be considered by the district court in the first instance, and that even if one accepts the arguments presented in the district court, they do not necessarily rebut the allegations of the plaintiff in this case that she was discriminated against on the basis of source of income. In fact, the facts show that the defendants engaged in an extensive system of targeting Section 8 voucher recipients and other economically disadvantaged individuals in Antioch, and that's the basis for this claim. Finally, in the event that this court does remain in the case for consideration of these issues, we also submit that it was an abuse of discretion for the district court to refuse to hear expert testimony based on regarding source of income discrimination, and also that it refused the proposed jury instruction on source of income discrimination. One question. Was the source of income claim against Bittner a live claim at trial? I'm trying to figure out what happened with the claim against Bittner at trial. I think that it's possible, given the treatment at the summary judgment stage, that it's somewhat less than clear what the district court specifically said on the record, and I don't have the citation in front of me. What I'm saying was that it was not that the case was only a race claim, that it was not a, I believe the words were not, it was not a vanilla race claim, but it was only a race claim. It was not an allegation regarding Section 8. I think that, at the very least, remand would be appropriate for a determination of whether this claim survived summary judgment, in which case the plaintiff should be entitled to the inferences entitled to a nonmoving party. If it did survive, then I think there should be additional proceedings on this claim. All right. Thank you. Thank you. Good morning, Your Honors. My name is Chris Lustig, and I have counsel for the appellees and defendants with me is James Fitzgerald, who is trial counsel for the same parties. May it please the Court, Your Honors, this appeal is dead on arrival for two reasons, one procedural and one substantive. With respect to procedure, appellant utterly failed to properly or fairly raise, maintain, or present any claim for source of income discrimination under FEHA. There was no claim presented. With respect to substance, and this is the nail in the coffin, even if she had asserted the claim, it wasn't viable, and that's according to a state court interpreting the state law. So I'll take each of those in turn. On the procedural issue, this was a race discrimination case from the beginning, and there were allegations of due process violations, of improper disclosure of juvenile records, conspiracy, 18 causes of action, styled causes of action. But at the heart of it, it was a race discrimination case. When you look at the Second Amendment complaint, you've got to go all the way down to the 16th cause of action, that's what they call it, 16th claim, to find the FEHA claim. And within the allegations comprising of that claim, there's an allegation regarding, there's an allegation that the defendant officers coerced the landlord in violation of FEHA without any recitation of the specific provisions of FEHA. There's an allegation that the conduct was intentional and that it was motivated by racial animus. There is no statement that it was motivated by any animus for mistoggle source of income or any reference to that phrase, source of income, in the claim or in the complaint. When summary judgment was briefed, the defendants, of course, filed a motion for summary judgment, raising multiple defenses, attacking the claims and the evidence, pointing out that there was insufficient evidence for plaintiffs to withstand their race claims. In plaintiffs' opposition, there's no notice, no, wait a minute, judge, we have a source of income claim. If you look down through the plaintiffs' opposition to their discussion of FEHA, they do cite sections from the FEHA statute. They casually refer to source of income in that two-paragraph discussion, and I say casually because they're only quoting from the statute, and they also include other protected classes like disability, which is clearly not an issue in this case. There was no meaningful discussion of a source of income claim. It was a race claim. Then there was a hearing at summary judgment, another opportunity for plaintiffs to point out that we have a source of income claim here. Again, nothing, extensive transcripts, 60 pages of transcripts in the record, discussions, Judge Spiro talking about each of these claims, federal claims, state claims. At one point, Judge Spiro notes the state claims are a mess, terribly, terribly. But then he goes on to say, but in large measure I think they will follow what I said with respect to the federal claims. Now, that's important because there is no federal source of income claim. There's no source of income claim under FHA. And when Judge Spiro says this, that is the opportunity for plaintiffs to speak up and say, Your Honor, we have a separate FEHA source of income claim as well. But there's no discussion of it whatsoever during the entire hearing, even during the discussions of the specific state statutes and the defenses that apply. At one point, Judge Spiro is trying to clarify what plaintiffs' claims are, and he says there's a lot of loose language along the way in reference to the state claims. So as much as plaintiffs would like to blame it on the court for somehow allowing this claim to slip through the cracks, it was plaintiff's fault that it slipped through the cracks, if it was ever even conceived of in the first place. Plaintiffs had multiple opportunities. And it's doubtful to me that it did even slip through the cracks. The evidence, when you look back at the records, suggests that they never really even conceived of this as a claim to begin with. And when you look at counsel's opportunities after the summary judgment order was issued, in preparation for trial, pretrial proceedings, opening statement, there's many opportunities, none taken, for them to get clarification from the court, what happened to this claim. There's nothing in the summary judgment order talking about source of income, and yet they don't ask for any clarification whatsoever. In fact, there's a joint jury instructions that are submitted, two rounds, joint jury instructions. Those FEHA claims in the joint jury instructions only refer to race. There's a pretrial order that Judge Spiro had the parties put together jointly that identifies what the claims are and spells them out under the FEHA section. There's only a reference to racial discrimination. That's at SCR 326 and 347 are the jury instructions, and at SCR 295 is the pretrial order. There was a statement given to the jury that the parties had agreed on, and they call this, and they only refer to discrimination on the basis of her race. A proposed verdict form submitted by the plaintiff in advance of trial, and this one also only refers to racial discrimination within the context of the FEHA claim. I think we get your point on that, so let's move on. Let's say there was one, okay? What's the response? Okay, even assuming that there was, Judge, this case is on all fours, the Sobby v. Sterling Intermediate State Court Opinion issued in 2010 that says that the Section 8 benefits do not qualify as income under FEHA's source of income definition. Therefore, Section 8 beneficiaries are not a protected class under FEHA, and that's exactly the holding of Sobby. It's not been depublished. There's no division in the courts of appeal on that issue. Although Sobby was concerned with giving landlords the freedom to reject Section 8 tenants, right? That was one of the issues in that case, yes. I guess, what's that have to do with, like, the situation here, county officials trying to kick out residents solely because they received Section 8, which is, I guess, the claim? Well, that may be a violation of something, Your Honor, but it's not a violation of FEHA's source of income discrimination prohibitions. Sobby issues this ruling, and it's a long opinion where they go through, the justices go through the legislative history, the plain language of the statute, legislative intent. It's a very extensive analysis of the legislation, and they come to the conclusion that Section 8 is just not a protected class under FEHA. So then county officials then would be able to discriminate against welfare recipients just because they receive welfare? Well, it's no, actually. Would that kind of discrimination violate the FEHA? If Your Honor is talking about general assistance, for example? Correct. Well, Sobby's analysis didn't deal with general assistance, so presumably it could be. That's my point. I guess, I mean, the way they interpreted source of income, it didn't address this, so I'm just trying to figure out. In Sobby, the court goes back and looks at the legislative history and finds that the legislature was actually presented with this Section 8 issue, the specific Section 8 issue of landlords not wanting to rent to Section 8 because then there are all these strings attached. So the legislature specifically tinkered with this definition to exclude Section 8 beneficiaries from FEHA. It didn't say anything about general assistance or AFDC or anything else. Presumably, there would be another analysis by another court if general assistance was an issue or some other form of assistance was an issue. But in the legislative history, it was Section 8. That's what Sobby was looking at on the facts of its case. That's our case. I'm going to ask you the same question asked the opposing counsel. Was the source of income claim against Vintner a live claim at trial? Well, Your Honor, if we're asking that question right now, years after the trial, and an appellant or plaintiff doesn't know what happened to its own claim, I think that's a problem. And so my answer to that is no, because there was no claim to begin with. They would like you to have to try to decide by looking back through this entire record whether there was a live claim or a denied claim. They want that to be the dichotomy, but that's not it. That's like, that's the loaded question about have you stopped beating your wife. You know, it just assumes, the premise just assumes that there was a live claim at any point. There wasn't. On that question, the line point, was there a special variance submitted during, as to defendant Vintner, on the 16th cause of action in the Sacramento complaint based on violation of FEHA, the basis being source of income and not race? Well, that's a hard question. The answer is no, but because when you look at the Second Amendment complaint, it only refers to correspondence from the defendants to the landlord. And the way the trial record reads, Officer Vintner had no interaction with the landlord. He comes into this case because he, his partner, wrote a letter to the housing authority that kind of, you know, was one of the early steps in this process. He, the allegations involving Vintner aren't even articulated in the FEHA claim. Judge Spiro still let it go through because he found that Officer Vintner had, that there was evidence out there, the reasonable jury could find that Officer Vintner may have harbored racist intent because of something in an unrelated case. But how was this, was there a special verdict? There was a special verdict. How were the questions phrased? Was there one tied into source of income as a basis for the FEHA violation? No. No, it was the jury instructions and, I mean, they're arguing that that was a mistake by the judge, but the jury instructions and everything else was race, racial discrimination. Thank you. Thank you, Your Honor. Thank you. Two minutes and 26 seconds left for your rebuttal. Yeah, just a few points, Your Honor. I think it's clear from the record that not only was a source of income claim raised, but it was presented on summary judgment. Specifically, I would direct the Court to the second amended complaint, paragraphs 38 to 41, which appear at page 10 and 11. Those allegations deal specifically with the defendant's actions toward Section 8 voucher recipients, independent from the race-based claims in the case. The same is true regarding the evidence submitted in opposition to summary judgment. I would direct the Court's attention to the plaintiff's opposition to summary judgment at pages 3 to 5 and Exhibits 7 and 25 submitted in opposition to summary judgment. Both of them deal with the Antioch Police Department's approach to dealing with Section 8 voucher recipients. Opposing counsel paraded out all of the instances of documents presented before the Court that did not include specifically a source of income-based claim, but I would remind the Court that there was a supplemental jury instruction submitted for the trial court's consideration which specifically included a source of income claim. I believe opposing counsel is simply wrong when he says that this case is on all fours with Sabi. The distinguishing feature in this is that Sabi only dealt with the question of whether payments to a landlord constitute income for purposes of FEHA. And I think that we have enough distinguishing features in this case that the argument that even if payments directly to a landlord do not constitute income, in this instance, the payments from the Department of Housing and Urban Development to the local housing authority are the functional equivalent of income for the benefit of Section 8 recipients, including the plaintiff in this matter. Finally, just one last point with regard to Officer Bittner and the claims at trial there. Although counsel said it was unclear what his interaction was with the landlord in this case, the basis for the claims that were considered by the trial court here were whether the defendant's actions qualified under Johnson v. Duffy as somehow a significant motivating factor which resulted in a violation of the plaintiff's rights. And I think that under that analysis, there's more than enough of a basis to present a source of income claim here. Thank you very much. Thank you. Thank you all for your arguments. The case will be submitted.
judges: Timlin, Noonan, Murguia